FILED
CLERKS OFFICE

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS -3 P 4 0

CIVIL ACTION
DISTRICT OF MASS.

|                                            |   |                          |
|--------------------------------------------|---|--------------------------|
| George Logue                               | l | Case No. 04-10271-GAO    |
|                                            | l |                          |
|               Plaintiff                    | l |                          |
|                                            | l |                          |
|        v.                                  | l |                          |
|                                            | l |                          |
| District Court of New Bedford              | l |                          |
| Commonwealth of Massachusetts              | l |                          |
| Court Justice Markey                       | l |                          |
|               Defendants                   | l |                          |

### PLAINTIFF'S RESPONSE TO
### COURT ORDER AND MEMORANDUM

Plaintiff respectfully offers the following response to show good cause why the Court's findings, pursuant to U.S.C. § 1915 (e) (2) and regarding dismissal, should not be implemented. This response refutes those issues cited by the Court and provides reason why the complaint should not be dismissed, but rather, allowed to proceed with any necessary amendments pursuant to Fed. R. Civ. P. 15 (a).

### RELEVANT HISTORY

On February 9, 2004, plaintiff filed his own complaint against the District Court of New Bedford for violations of his civil rights during proceedings held before that Court. Plaintiff alleges that the trial court, acting with private actors, failed to function as it should have, and protect plaintiff against false and defamatory charges. Plaintiff would amend to the complaint that this severely damaged his reputation and imposed a stigma that has interfered with his ability to take advantage of employment opportunities.

While awaiting screening of the complaint by this Court, plaintiff has submitted several amended versions in accordance with Fed. R. Civ. P. 15 (a); the most recent was submitted on September 30, 2004. However, this latest version apparently was not seen during the recent screening. Hence, this Court's review and comments were based on the versions of February and March, 2004.

On September 29, 2004, Justice O'toole issued a 5-page memorandum and an order concluding that the complaint (version of March 8, 2004 being reviewed) is subject to dismissal pursuant to several statutes, including 29 U.S.C. § 1915 (e) (2), and pertaining to sections 1983 and 1985 of Title 42. Plaintiff believes the cited cases by Justice O'toole in this instance, while supporting a claim of immunity in the general sense, run contrary to other rulings that support an injured party

being able to file suit against these entities under the state. Plaintiff respectfully submits this response to address and refute those issues cited by the Court to show reason why it should not be dismissed.

## DISCUSSION

First and foremost, the complaint should not be dismissed because this defendant conspired and violated plaintiff's rights guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment, and a panoply of other rights arising under the Constitution, by failing to consider the details of his apprehension or the false accusations leveled against him. In doing so, defendants falsely imprisoned him, and thus denied plaintiff of his civil liberties by acting under color of state law, 42 U.S.C. § 1983(1988).

Now, this Court has noted that the Trial Court is an arm of the state, and therefore is immune from federal suit. Justice O'toole's memorandum points out, at the onset, that the New Bedford Trial Court, as part of the state system, is not amenable to suit under Title 42 U.S.C. § 1983 because a state is not a "person" as defined within that statute. And although a specific defendant has now been named in the most recent version of the complaint, he is a state official who was acting in his official capacity. As propounded in the prior cases cited by Justice O'toole, a suit against state officials in their official capacity is equivalent to a suit against the state. The Court's memorandum goes onto say, citing several cases, that the Trial Court is immune from federal suit under the Eleventh Amendment to the U.S. Constitution, and that the named justices are granted absolute immunity from Title 42 § 1983 claims under the doctrine of immunity; either of which issues could render the complaint subject to dismissal.

By the same token, as a public entity, the services these state courts and their officials provide, under the watchful eye of the Commonwealth, in this instance, must be made available to all people. In providing these services, the officials and employees of the Court (state), as always, must abide by the applicable cannons, doctrines, and laws therein. As such, where Title II of the Americans With Disabilities Act of 1990 (ADA 104 Stat. 337 42 U.S.C. §§ 12131-12165 was recently used to challenge the immunity doctrine, it provides that "no qualified individual … be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."

As a result, the states are not necessarily shielded, by claiming immunity under the Eleventh Amendment, from qualified citizens seeking monetary damages. Tennessee v. Lane, U.S. case No. 02-1667, 104 S. Ct. 1978; 158 L. Ed. 820 (2004). Moreover, in this recently decided case, a hint of a broader criticism of states is present for their "pattern of unequal treatment in the administration of a wide range of public services, programs, and activities…" And Justice Stevens's majority opinion highlights that Congress enacted Title II "against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights." Plaintiff submits that this recent decision, generally speaking, challenges the memorandum's cited construction and each of the issues [referring to issues raised by Justice O'toole, 1. the Trial Court not being amenable to suit under § 1983; 2. absolute judicial immunity under § 1983; and 3. deprivation of plaintiff's class-based

2

rights under § 1985(3)]. Therefore, by virtue of right of access to the courts, the complaint should not be subject to dismissal.

Without argument this Court has jurisdiction over this matter pursuant to title 42 U.S.C. in so far as the named Justice, others in the District Court of New Bedford, and the other parties named in the related complaints, both upstream and downstream of the Trial Court, were several in a series of defendants, in which plaintiff's civil rights were violated.  By failing to diligently perform their duties, and abusing their discretion, while plaintiff was under duress, each of them contributed to and permitted the Civil Rights violations to continue.  The violations merit being addressed.  And, for the reasons cited above, generally, the complaint should not be dismissed.

In a more specific matter, plaintiff respectfully draws attention to the numerous reasons outlined in the compelling and dissenting arguments presented in Will v. Michigan Department of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), regarding state sovereignty.  In light of the cited recent decision, does the 1989 decision deserve another look?  The question being, should it be held as the hard and fast rule, that a state is not a "person?"  Doesn't Tennessee v. Lane indicate a difference of opinion, and perhaps a trend in the other direction? Paraphrasing the dissenting Justices in the former decision, the origins and ratification of the Civil Rights Acts occurred during a volatile period in the Union's history and it is difficult to understand or believe that Congress would single out "states" by not including them within the group of entities that might be liable under § 1983.  Rather, and upon review, it is evident that the language and legislative history of § 1983 seems to indicate that states *could* be interpreted to be a "person."  Further, where it is well established that the state is the ultimate and real objective in a 1983 official-capacity action against a state official, in light of the recent decision, it follows that more might now also challenge state sovereignty under the Eleventh Amendment in even broader instances. Regardless of plaintiff's belief, the Supreme Court's current holding that a state is not a "person" under § 1983, conflicts with a long line of judicial authority supported by that very premise, including this most recent decision in the sixth circuit.

Regarding parity, the complaint should not be dismissed for the following reason.  The complaint, though yet to be revised, alleges that defendant's actions clearly indicate an abuse of process leading to malicious prosecution on his part.  By taking an active part, by sanction and omission, and in continuing and allowing the continuation of criminal proceedings himself, allowing plaintiff to be falsely imprisoned, defendant violated Restatement (second) Torts § 655, and is subject to the same liability for malicious prosecution as those defendants named in the related complaints; defendants whose case files have been issued orders to serve them their respective complaints.  That is, plaintiff believes that defendants District Court of New Bedford and defendant Justice Markey, are parties that are just another link in the chain of custody of events that transpired, and therefore are subject to the same liability as if they had originally initiated the proceedings themselves, Mitchell v. City of Boston, 130 F. Supp 2d 201, (2001).

The most recent decision in Tennessee v. Lane, and the argument presented above, seem to support that sufficient reasoning and decision exists, certainly, to support the claim against the Trial Court from being dismissed, and perhaps also against the named individual justice.  Where plaintiff leaves this decision, regarding the later, to this Court, he still respectfully suggests that dismissing complaints against any of these entities, characterized here as equally responsible

under Restatement (second) Torts § 655, is contradictory in nature; particularly where the Court has already issued Orders for some of the defendants in the related complaints to be served. To otherwise permit, or to release some of the entities, according to the memorandum's cited construction, draws an illogical distinction between sins committed by the county and city officials on one hand, and those committed by state officials on the other. And as cited above, that distinction for states runs contrary to the sixth circuit decision.

Finally, and regarding the nature of the claim pursuant to section 1985(3), plaintiff has alleged facts indicating several defendants deprived him of his civil liberties. While he has not listed all of the specific reasons (in the complaint) that may have motivated these people, based on the facts and events described, the allegations go beyond simply being conclusory. If plaintiff comprehends the statutes and the Court's concern, a trial worthy section 1985(3) conspiracy claim requires sufficient evidence that a class-based discrimination motivated the alleged conspirators. Plaintiff asserts that a more detailed characterization of himself, at the appropriate time, will support other factors motivating defendants to conspire as described in the related complaints. As a "qualified individual," under title II of the ADA, plaintiff submits that deprivation of his rights was, at least partially class-based. Clarifying the complaint, as in the first paragraph of this discussion, and alleging that the defendant and agents of the trial court denied plaintiff equal protection of the law, is sufficient to withstand a motion to dismiss where the complaint specifies one of the conspirtors. Milner v. National School of Health Technology, 409 F. Supp. 1389 (E.D. Pa. 1976). Therefore, the section of the claim based on § 1985(3) allegations should not be subject to dismissal. As a civil action, and considering the "players" involved, plaintiff alleged § 1985(3) because it seems to best characterize the violations of these string of players in each of the related complaints. The uncertainty surrounding additional motivating factors is that it is unclear that other criminal or corrupt intent did not exist. If plaintiff understands correctly, conspiracy is a specific "intent" crime requiring the intent to advance some unlawful objective of the conspiracy. Where specific intent is not required under § 1983, plaintiff made the § 1985(3) allegation to describe the defendant's intent with minimal reference to his class-based characterization, and while also considering further criminal allegations in the complaint. This is not to indicate plaintiff believes they did not exist, and if permitted, he will encompass further allegations to include violations of 18 U.S.C. §§ 241-242.

In conjunction with the related complaints, plaintiff asserts that it is evident the allegations are meritous and that the motivation existed both under the color of law and pertaining to the criminal deprivation of rights. The later statute applies to both private individuals and public officials. U.S. v. Price 383 U.S. 787, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966). While he has attempted to show that there was an understanding amongst the conspirators, plaintiff asserts that the existence of the conspiracy can be inferred from the facts provided and the circumstances that existed. An inference of understanding or an agreement, can be made where the particular actions, performed together, were unlikely to have been accomplished by the actors without such an understanding or agreement. Both Markey and Beserosky had worked in the trial court for years. Their paths crossed numerous times, if not frequently, while in each other's presence generally in court, and specifically while working on common cases. Each of them were well educated in the law and had many years of experience practicing the law in the context of local rules, habits of the trial court personnel, and any unorthodox patterns in behavior or events which typically characterize any specific environment. Plaintiff reasserts there is evidence of joint

4

discriminatory action between these defendants, not to mention among the other "players" whom plaintiff has filed related complaints. Therefore, plaintiff believes that the claim based on § 1985(3), and coupled with these further allegations mentioned and discussed above, would withstand any motion for summary judgment and therefore it should not be subject to dismissal

## CONCLUSION

Based on the foregoing discussion, plaintiff believes that neither the Trial Court of New Bedford, nor the named defendants should be subject to relief by claiming immunity under either the Eleventh Amendment or 42 U.S.C. § 1983. In addition, he believes the complaint is worthy of due process and that subject to the discretion and final decision of this Court, that it should not be dismissed but rather, be permitted to be amended and, if approved, served on the defendants.

Wherefore, plaintiff prays that the complaint not be dismissed, and that it may please the Court to issue a ruling that may allow the complaint, if necessary, to be amended with more specification and go forward.

Respectfully submitted,

November 3, 2004

5